DONNELL, *Petitioner,*
*v.*
BRIGGS, *Respondents.*
(ERB No. 512, CA 10793)

588 P2d 650

Bromleigh S. Lamb, Salem, argued the cause and filed the brief for petitioner.

William F. Hoelscher, Assistant Attorney General and Counsel, Salem, argued the cause for respondents. With him on the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Neal C. Lemery, Certified Law Student, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

Petitioner seeks judicial review of the order of the Employment Relations Board (ERB) in which he challenges the action of his employer in abolishing petitioner's classified position as Physical Plant Superintendent 2, and reassigning some of his former duties to an unclassified position, and others to what he contends are "inappropriate" classified positions.

Petitioner is (and has been since 1967) an employee of respondent Eastern Oregon State College (EOSC) in the state classified service. The position for which he was hired was created by the respondent in 1967 because of anticipated growth in student enrollment and physical plant construction. That growth never materialized.

Respondent Briggs was employed in 1973 as president of the EOSC. Because the legislature would not support new construction or additional program improvement funds until such time as the college gained enrollment, it became necessary to reorganize personnel. The reorganization was started in 1974, and on July 8, 1976, respondents notified petitioner and the Personnel Division in writing that his position of Physical Plant Superintendent 2 was being abolished.[1] Petitioner thereafter took a demotion, in lieu of layoff, to the lower-paying classified position of Plant Operations Foreman and filed a grievance with respondents and the Personnel Division. Following the Division's acquiescence in respondents' action, petitioner filed a

---

[1] Written notice of layoff is required by ORS 240.525. The notice in part read:

"The reorganization abolishes your senior position in Plant Services effective July 31, 1976. This memorandum constitutes the 15 days notice as required by Personnel Rules and Merit System Laws of the State of Oregon although the actual date of reorganization will be August 1, 1976.

"The layoff in no way reflects discredit upon your services to Eastern Oregon State College and is without prejudice. You will be given every opportunity under Personnel Rule 61.400 to file a written request for a demotion in lieu of the layoff to any position for which you have sufficient service credits."

petition with ERB for review, contending that the abolition violated Rule 61-100 of the Personnel Division[2] for the reasons stated above, and that respondents did not act in good faith in abolishing the position. ERB found that the action of respondents was taken in good faith and concluded that the action was neither arbitrary not contrary to rule or law. Petitioner does not contest on appeal the findings with respect to good faith. Nor is there any contention here that the proper procedures for changing the classification plan were not followed to accomplish reorganization of the administrative framework at EOSC and the resulting abolition of petitioner's position.

The only contentions are that abolition was invalid because Rule 61-100 of the Personnel Division does not permit the duties and responsibilities of petitioner's former classified position to be reassigned to an unclassified position, and does not permit the assignment of the rest of his former position's duties to other classified positions because they were reassigned to inappropriate classifications.[3]

---

[2] Personnel Division Rule 61-100 provides:

"An appointing authority may lay off an employee because of abolition of position, shortage of funds or work, a material change in duties, or changes in an organizational unit. Duties performed by laid-off employees may be reassigned to other employees already working who hold positions in appropriate classes. No temporary or permanent separation of an employee from the service as a penalty or disciplinary action shall be considered a layoff."

[3] We note that prior to the creation of petitioner's former position, EOSC managed the physical plant operation through its Business Manager and two Plant Operations Foremen. The Business Manager had the administrative-supervisory responsibility for the whole operation with the Plant Operations Foremen (one for skilled craftsmen, custodial and grounds and one for carpenters and pointers) reporting to him. The Business Manager's position was in the unclassified service. When the classified position of Physical Plant Superintendent 2 was established, it assumed the unclassified Business Manager's duties of supervising one Plant Operations Foreman, one Carpenter Foreman, and one Grounds Supervisor.

When petitioner's former position was abolished, respondent reassigned the petitioner's duties to the same positions which had them before Physical Plant Superintendent 2 position was created.

[ 826 ]

The Oregon State Merit System Law, ORS chapter 240, divides all employees in the service of the state into three categories: classified service, unclassifed service, and the exempt service.[4] The classified service consists of all those positions which are not listed in ORS 240.200 (unclassified service) or ORS 240.205 (exempt service). The body charged with administering the Merit System Law in the Personnel Division of the Executive Department of the state. The Division is vested with the authority (subject to review by ERB) to determine which positions in the state service are properly in the classified service or unclassified service and what duties persons in those positions may perform appropriately.[5] One of the duties placed upon the Division is to adopt and maintain a classification plan whereby all of the positions in the classified service are grouped into classes based upon their duties, authority, and responsibilities.[6] Thereafter, when an appointing authority desires to create a new position or make any permanent and substantial change in the classification plan or duties, respon-

---

[4] ORS 240.195.

[5] ORS 240.195; 240.207(2); 240.215; 240.230.

[6] ORS 240.215 provides:

"(1) The division shall adopt a classification plan which shall group all positions in the classified service in classes based on their duties, authority and responsibilities; and which shall set forth for each class of positions, a class title and a statement of the duties authority and responsibilities thereof. A statement of the minimum qualifications for each class shall be adopted in like manner. Each class of positions may be subdivided and classes may be grouped and ranked in an appropriate manner. The classification plan and minimum qualifications shall be effective only when approved by the Governor.

"(2) After consultation with appointing authorities, the administrator shall allocate each position in the classified service to the appropriate class therein on the basis of its duties, authority and responsibilities. Any employe affected by allocation of a position to a class shall, after filing with the administrator a written request for reconsideration thereof, be given a reasonable opportunity to be heard by the board."

ORS 240.230 provides:

"No person shall be appointed to or employed in a position in the classified service under a class title which has not been approved by the administrator as appropriate to the duties to be performed."

sibilities, or authority of a position, the administrator of the Division must first be notified. Any affected employee has the right to appeal the change to ERB. Changes are effective only upon approval by the governor.[7] Whenever a reduction of employees is required because of a material change in duties or organization, ORS 240.525 requires that the employees affected shall be laid off and that written notice be given to the employees and the Division 15 days prior to the effective date of the change.[8]

It is clear that the legislature intended the Division to have authority over the state service, particularly the classified service. It is the Division's duty to monitor the creation and abolishment of positions in the classified service to make certain that the assignment of duties brought about by such reorganizations are not inconsistent with the applicable statutes and the classification plan. In the situation before us, the Division concurred in the respondent's reorganization which abolished petitioner's position, finding that "without an ongoing construction program at Eastern Oregon State College, the classification level of Physi-

---

[7] ORS 240.220 provides:

"(1) An appointing authority desiring to establish a new position in the classified service or to make any permanent and substantial change in the duties, authority or responsibilities of a position in that service, shall notify the division in writing of the proposed change. Any employe affected by the contemplated change may appeal the change to the board.

"(2) A modification of the classification plan or the minimum qualifications shall be effective only when approved by the Governor."

[8] ORS 240.525 provides:

"(1) Whenever a reduction in employes is required because of a shortage of funds or work or a material change in duties or organization, employes shall be laid off by appointing authorities and under rules, which shall take into account length of service and merit rating.

"(2) In every case of layoff of a regular employe, the appointing authority shall, 15 days before the effective date thereof, give written notice to the employe and the administrator. In any case where an appointing authority refuses, or fails to certify before the effective date thereof, that the layoff was for reasons not reflecting discredit on the employe, it shall be deemed a dismissal and shall be subject to the provisions concerning dismissals in this chapter."

cal Plant Superintendent 2 cannot be justified at EOSC." Once the position was no longer justified, it became necessary to reassign the abolished position's duties to other positions. The Division, after investigation, concluded that the reassignment of petitioner's former duties was not "inconsistent with duties of unclassified Business Manager and Assistant Business Manager positions in Higher Education."

Petitioner, however, would have us read the Division's Rule 61-100 as prohibiting the reassignment of some duties from an abolished classified position to an unclassified position. As we read the statutes, such an action is permitted; ORS 240.525 permits employee layoffs due to reorganizations and ORS 240.215 grants the Division authority to assign duties to positions that it finds appropriate. The position of business manager may be an unclassified position. ORS 240.207(1)(b)(C) and (2) provides:

"(1) In addition to those positions designated by ORS 240.205, the unclassified service shall include:
"* * * * *

"(b) All staff members of the state system of higher education in the following positions, whether the type of service is teaching, research, extension or counseling:
"* * * * *

"(C) Comptroller, chief budget officer, business manager, director of admissions and registrar."
"* * * * *

"(2) No position may be filled and no appointment made under this section, other than to a position directly imvolved in teaching, research, extension or counseling, unless a determination has been made by the Personnel Division as to whether the position shall be in the classified or unclassified service."
"* * * * *"

There is nothing in the statutes prohibiting the assignment of duties of a former classified position to an unclassified position. The quoted statute taken as a whole permits the position of "business manager" to be unclassified, and the Division has concluded that the

position is in the unclassified service, thereby satisfying ORS 240.207(2).

■ We do not understand Rule 61-100 to require a contrary conclusion. The purpose of the rule is to prevent the duties of a laid-off classified employee from being assigned to other classified employees in classes which are inappropriate for the performance of those duties. It does not purport to prohibit the duties from being assigned to unclassified or exempt positions.[9]

ERB's findings on this contention are supported by the record, and its conclusion is supported by the findings.

■ Petitioner's other contention on appeal is that the assignment of the rest of his former duties (those not assigned to unclassified positions) to other classified positions violated Rule 61-100 because the classification of those positions does not permit performance of such duties; *i.e.,* they are not "appropriate classes." ERB made no findings of fact as to whether persons in these classified positions could appropriately perform those duties. ERB did conclude that respondents' actions were not arbitrary or contrary to rule or law. That conclusion, however, is not supported by adequate findings. The cases require that "an agency demonstrate in its order a rational relationship between the facts and the legal conclusions upon which it acts in each case." *McCann v. OLCC,* 27 Or App 487, 493, 556 P2d 973 (1976), *rev den* (1977); *Home Plate, Inc. v. OLCC,* 20 Or App 188, 190-91, 530 P2d 862 (1975). Therefore, this case must be remanded for findings on the question of whether the assignment of duties to classified positions was to appropriate

---

[9]Petitioner relies on a statement, taken out of context, in a 1946 Attorney General's opinion (46-48 Op Att'y Gen 21) responding to questions relating to the then new civil service law. That statement is:

"* * * The principal restriction is that duties of positions properly in the civil service may be performed only by employes in the classified service. They may not be assigned to employes in the unclassified service."

classes. *Michelet v. Morgan,* 11 Or App 79, 83, 501 P2d 984 (1972).

Reversed and remanded.