Argued and submitted March 23,
reversed and remanded May 18, 1981

BREMER,
*Petitioner,*
*v.*
EMPLOYMENT DIVISION et al,
*Respondents.*

(No. 79-AB-1184-A, CA 19458)

628 P2d 426

Larry T. Coady, Albany, argued the cause for petitioner. With him on the brief was Coady & Moore, Albany.

William F. Gary, Deputy Solicitor General, Salem, waived appearance for respondent Employment Division.

No appearance for respondent Sims Fiberglass Company.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

"What we have here is a failure to communicate."[1] In our prior decision in this matter, *Bremer v. Employment Division,* 47 Or App 1131, 615 P2d 1170 (1980), we reversed a decision of the Employment Appeals Board which held that this claimant left work voluntarily and without good cause. Claimant left work after a fire at her place of employment because she believed that the work area was unsafe. The Board held,

"It has not been shown that the claimant investigated any reasonable alternative to leaving this work. Therefore, good cause for leaving work has not been established."

We said,

"The order does not indicate what alternatives the Board felt were available to claimants or whether or why the Board determined those alternatives were reasonable. Indeed, there is no finding of fact as to the availability of *any* alternative. Before the Board may hold that a claimant has failed to consider internal 'reasonable alternatives' to leaving work, it must be found that there were such alternatives. Without such a finding, the Board's conclusion is not supported by its own findings." *Id.,* 47 Or App at 1137-1138.[2]

On remand, the Board reaffirmed its original order. It explained,

"OAR 471-30-038(4), defining good cause for leaving work, requires 'The reason must be of such gravity that the individual has no reasonable alternative, but to leave work.' * * * In the case of *Bremer v. Employment Division,* * * *, the Court referring to the decision of the Employment Appeals Board, stated 'The Order does not indicate what alternatives the Board felt were available to claimants or whether or why the Board determined those alternatives were reasonable. Indeed, there is no finding of fact as to the availability of *any* alternative. Before the Board may hold that a claimant has failed to consider "reasonable alternatives" to leaving work, it must be found there were

---

[1] Strother Martin concerning Paul Newman in "Cool Hand Luke" (Warner Brothers, 1967); *see also,* Peace, *Cool Hand Luke* (Scribner's, 1965).

[2] References throughout this opinion to "claimants" are due to the fact that this claimant's case was consolidated before the Board with that of claimant Summerlin. *Summerlin v. Employment Division,* 52 Or App 235, 628 P2d 405 (1981).

such alternatives.' Although this may appear to be a change in the Court's position that the burden of proof is on the claimant to establish good cause for leaving work, we do not find that is what the Court intended. No reference is made to deviating from that position. Therefore, if the burden is upon the claimant to establish good cause , for leaving work, then it must be shown that no reasonable alternatives were available. Not only has the claimant failed to make such a showing, claimant has not shown that any alternatives were even explored prior to leaving. Having failed the burden of proof, good cause for leaving has not been established."

The difficulty with the Board's resolution of this case on remand is that the Board is confusing "burden of proof" with the requirement that any quasi-judicial order of an administrative body rationally connect the facts the body *has* found with the legal conclusion it reaches. The question here is not who had the burden of proof; no one disputes that. Rather, the question is whether, in its evaluation of the facts in light of the burden of proof and its explanation of the evaluation of those facts in its order, the Board has made the appropriate findings and appropriately explained its conclusions. We once again hold that it has not.

The misunderstanding here concerns the nature of the claimant's burden of proof. The *inquiry* concerns whether there is no reasonable alternative but to leave work. OAR 471-30-038(4). This rule does *not* require, as the Board appears to suggest, that a claimant must show in every case that she asked about or otherwise explored alternatives to leaving work. There are cases in which any such effort would be useless. *See, e.g., Sothras v. Emp. Div.,* 48 Or App 69, 616 P2d 524 (1980).

At the hearing which was held in this case, all of the questioning was conducted by the referee.[3] All of the discussion focused upon the dangerous conditions which existed at the claimant's place of employment both prior to and after the fire which gave rise to her resignation. The referee conducted no inquiry as to "reasonable alternatives;" it is therefore not surprising that claimant did not

---

[3] Neither party was represented by an attorney.

focus upon this question. In spite of this procedural posture, however, there was evidence adduced as to what efforts had been made by the employer to rectify certain of the conditions which had existed prior to the fire, as well as evidence concerning the continuing existence of some potentially dangerous circumstances at the plant after the time the claimant left. The referee addressed all of the pertinent circumstances in his opinion:

> "There is no question but that claimants' concerns over the possibility of being trapped by fire in the lamination room (not to mention the probable effects of an acetone explosion) were well founded; and that they were exposed to an unreasonable potential risk to their safety. It was neither unreasonable nor imprudent for claimants to leave. The employer suggests and argues that, instead of leaving, claimants could have continued to work during such time as the employer was given a reasonable chance to bring its premises up to required safety standards, including approved storage of acetone. This argument fails to take into account that claimants were highly unnerved by the sudden and near-fatal fire and explosion of September 27, and by their realization that a similar event could well occur in their own work area. In the circumstances, it can hardly be said that for either claimant to leave work was a less reasonable alternative than that the employer suggests."

We understand the referee's opinion to be to the effect that the psychological impact of the fire upon the claimant, coupled with the former and continuing hazardous situation in the work place was such that, under the circumstances, made it reasonable for her not to have pursued alternatives to leaving work. This may very well explain why the referee did not direct the testimony into this area at the hearing. There was evidence to suggest that much of the fire hazard which had been created prior to the incident which caused claimant to leave continued to exist after she had left. In light of this fact the referee was entitled to conclude that exploring alternatives to leaving with the employer would not have made any difference, since the employer was not immediately going to alleviate the situation to the extent necessary to make the premises safe.

In response to the referee's conclusion and to the evidence which would have permitted it, the Employment Appeals Board has simply chosen to make reference to the burden of proof. That will not do. We hold that where the referee holds, and there are facts in the record which could be understood to indicate, that a discussion of reasonable alternatives to leaving work would have been fruitless, the Board must also address this question.

Reversed and remanded.